UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| VAN BERRY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 14-356-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| OFFICE OF THE FAYETTE COUNTY SHERRIFF, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the parties' cross-motions for summary judgment. [Record Nos. 80 and 82] While the plaintiffs admit that there are factual disputes regarding the amount of unpaid overtime compensation that they are entitled to recover, they contend that they are indisputably owed some compensation by their former employer, Defendant Office of the Fayette County Sheriff ("the Sheriff's Office"). [Record No. 80-1] Conversely, the Sheriff's Office contends that the material facts are not in dispute and it is entitled to summary judgment regarding the plaintiffs' claims. [Record No. 82-1] The plaintiffs' motion will be granted to the extent that it seeks summary judgment regarding the Sheriff's Office's sovereign immunity defense. However, due to outstanding factual disputes regarding all other claims and defenses, the motions otherwise will be denied.

**I.**

Plaintiffs Van Berry, Joshua Bedson, James Dunn, and Aaron Wilson were previously employed as deputies by the Fayette County Sheriff's Office. [Record No. 66] The Sheriff's Office does not have a time keeping system whereby employees punch in or punch out using

a clock. Instead, all employees are responsible for recording their hours using time sheets provided by the Sheriff's Office's Human Resources Department. [Record No. 80-2, p. 7] According to Sheriff Kathy Witt, each employee receives two paid ten-minute breaks and one paid thirty-minute lunch break during each eight-hour shift. [Record No. 80-3, p. 9] The paid breaks are not accounted for by the employees on their time sheets. Therefore, if a deputy takes a thirty-minute lunch break, he or she will record eight rather than seven-and-a-half hours. Sheriff Witt testified that her employees always receive an entire thirty-minute lunch break; however, Plaintiffs Berry, Dunn, and Wilson testified that they often did not receive a full lunch break, if they had time for lunch at all. [Record No. 82-6, pp. 1-2, Record No. 88-2, p. 6, Record No. 88-1, pp. 7-8]

When employees record their time, the Sheriff's Office has a policy that they should round the time worked each day in quarter-hour increments. *Id.* Melony Cox, the defendant's Human Resources Director, explained that if an employee worked under seven-and-a-half minutes in a fifteen-minute period, that employee should round down the time, whereas if the employee worked over seven-and-a-half minutes in a fifteen-minute period, he or she should round up instead. *Id.* While there is no written policy to this effect, several employees, including the plaintiffs, have demonstrated an understanding of this concept. Therefore, if an employee worked more than seven-and-a-half minutes beyond his eight-hour shift, he or she recorded overtime in quarter-hour increments. According to Cox, employees should also record reasons for overtime in the comment section of time sheets. [Record No. 80-2, p. 7]

Deputies employed by the Sheriff's Office work three shifts: (i) 8:00 a.m. to 4:00 p.m.; (ii) 4:00 p.m. to midnight; and (iii) midnight to 8:00 a.m. [Record No. 80-3, p. 4;

Record No. 80-2, p. 15]  At 8:00 a.m. and 4:00 p.m. on Monday through Friday, all employees either beginning or ending their shifts are required to attend roll call.  Sheriff Witt explained that roll calls are not only for accounting but also for deputies working one shift to convey information to deputies working the next shift.  [Record No. 80-3, p. 6]  While Plaintiff Berry testified that attending roll call was "strongly suggested," other plaintiffs together with Sheriff Witt and Lieutenant Colonel Matthew Amato agree that attendance at roll call is mandatory unless a deputy is engaged in other job-related tasks.  As a result, deputies on first shift are required to attend both the 8:00 a.m. and the 4:00 p.m. roll calls unless engaged in activities such as: manning a secure entrance to a courthouse; transporting prisoners; or providing courtroom security for an assigned judge.

Lt. Col. Amato, who usually calls roll for the morning and afternoon shifts, testified that he usually begins the afternoon roll call at exactly 4:00 p.m.  [Record No. 80-4, p. 9] Sheriff Witt, who stated that she attends the "majority of roll calls," also testified that Lt. Col. Amato starts "promptly at 4 o'clock," and never waits for late arrivals.  [Record No. 80-3, p. 7] Further, at least five of the defendant's employees submitted affidavits affirming that roll call for the afternoon shift begins at 4:00 p.m.  [Record Nos. 82-21, 82-22, 82-23, 82-24, and 82-25]  Even Plaintiff Berry testified that roll call "started right at 4:00."  [Record No. 82-11]  Plaintiff Wilson, however, offered deposition testimony that afternoon roll calls sometimes begins as late as 4:10 p.m.  [Record No. 88-1, p. 6]  According to Wilson, at least once or twice a week, Lt. Col. Amato waits on certain people to arrive, delaying the 4:00 p.m. start time for roll call.  *Id.*

In addition to the above dispute regarding the starting time for afternoon roll call, the length of roll call is also a matter of debate.  According to Lt. Col. Amato, it usually only

takes two minutes to call the roll at 4:00 p.m. [Record No. 80-4, p. 9] After calling employees' names, Lt. Col. Amato asks the commanders present whether they have anything to mention to the staff. *Id.* He estimated that, on average, roll call lasts four to six minutes but may go longer than eight minutes less than once a month. *Id.* at 12. Sheriff Witt estimated three to five minutes was needed to complete the process. [Record No. 80-3, p. 7] And when asked how many times she recalled a roll call lasting more than four or five minutes, she replied, "I don't recall. They're not very often. In fact, I would say that they are very rare." *Id.*

The same five employees who stated that roll call began at 4:00 p.m. also stated in their individual affidavits that roll call is "usually done in less than five minutes." [Record Nos. 82-21, 82-22, 82-23, 82-24, and 82-25] However, in their Amended Complaint, the plaintiffs allege that the 4:00 p.m. roll call lasted "for an average of 15-30 minutes per day past 4:00 p.m." [Record No. 66, p. 3] Contrary to the allegations of the amended Complaint, Plaintiff Bedson offered deposition testimony that the 4:00 p.m. roll call typically lasted ten to fifteen minutes. [Record No. 88-3, p. 4] And Plaintiff Dunn testified that this roll call "could vary anywhere from – it might be a five-minute run through the names, nobody's here today, so you're gone, up to everyone talks, every commander talks. It could be 15 to 20 minutes." [Record No. 88-2, p. 5]

Even though the 4:00 p.m. roll call takes place after the regular eight-hour shift, the plaintiffs claim that they never recorded the time they spent in these meetings and, therefore, did not receive compensation for it. Plaintiff Dunn testified that he never raised the issue because he did not "want to make it difficult on [himself] to work there." [Record No. 82-17, p. 1] Plaintiffs Berry, Bedson, and Wilson all contend that they asked one or more of

- 4 -

their supervisors whether they could record the roll call time on their timesheets and were advised against it. [Record No. 82-4, p. 1; Record No. 82-14, p. 2; Record No. 88-1, pp. 9-10] Two supervisors, Chief Deputy Modica and Chief Rhoads, submitted similar affidavits that state:

> 4. I told employees to document all of the time they have worked, and have not told anyone anything else. Any statements by the plaintiffs to this lawsuit which claim that I have suggested or instructed a person to not document time is [sic] incorrect.
>
> 5. None of the plaintiffs have come to me asking about how to record their attendance at the 4 p.m. roll call.

[Record Nos. 82-21 and 82-24] The plaintiffs' statements are also inconsistent with the testimony of other Sheriff's Office employees who state that, if roll call lasted longer than eight to ten minutes, they were reminded to record it as overtime. [Record No. 80-2, pp. 22-23; Record No. 80-3, p. 7; Record Nos. 82-21, 82-22, 82-23, 82-24, and 82-25]

On September 4, 2014, Plaintiffs Berry and Bedson filed a Complaint initiating this action, alleging multiple claims against the defendant, including violations of the Fair Labor Standards Act (FLSA). [Record No. 1] The original Complaint also sought class certification for similarly-situated employees. *Id.* On February 5, 2015, the Court denied the plaintiff's motion for conditional certification of a collective action. [Record No. 22] Subsequently, the plaintiffs were allowed to amend their complaint. [Record Nos. 56 and 65] The Amended Complaint added James Dunn and Aaron Wilson as plaintiffs and simplified the claims against the defendant. [Record No. 66] At present, the plaintiffs only allege that the Sheriff's Office violated the FLSA and Kentucky's wage and hour laws by failing to compensate them for time spent at the 4:00 p.m. roll call. *Id.* The plaintiffs seek

unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, and costs incurred in this action. *Id.*

The plaintiffs now request partial summary judgment on the following issues:

1. The Defendant is not entitled to assert sovereign immunity as a defense to this action.

2. The Defendant's rounding policy violates the Fair Labor Standards Act, 29 U.S.C. § 201, et al.

3. The Plaintiffs are entitled to overtime compensation for any time spent attending mandatory 4:00 p.m. roll calls in weeks in which they worked 40 hours or more.

4. The Defendant's record keeping practices violated the FLSA and Kentucky law.

[Record No. 80] The Sheriff's Office has also moved for summary judgment, alleging that: (i) the plaintiffs failed to produce evidence sufficient to support their claims; (ii) the thirty-minute paid lunch break creates a credit toward any additional compensable time worked; and (iii) the defendant's rounding practice complies with federal requirements. [Record No. 82-1]

## II.

Rule 56(a) of the Federal Rules of Civil Procedure states, in part,

A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law.

"A genuine issue of material fact exists when there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Chao v. Hall Holding Co.*,

285 F.3d 415, 424 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). *See Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

In deciding whether to grant a single motion for summary judgment, the Court must view all the facts and draw all inferences from the evidence in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Therefore, when a court is presented with cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001) (quoting *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

## III.

The Fair Labor Standards Act prohibits employers from allowing non-exempt employees to work longer than forty hours a week "unless such employee receives compensation for his employment in excess of the hours specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). If an employer violates the overtime protections of section 207, the employer is liable to the employee for unpaid overtime compensation plus "an additional equal amount of liquidated damages" as well as a reasonable attorney's fee and costs. 29 U.S.C. § 216(b). Kentucky's wage and hour laws also require employers to compensate non-exempt employees at a rate of not less than one and one-half their hourly wages for working longer than forty hours in a week. K.R.S. § 337.285.

In the present case, it is undisputed that the defendant's employees, including the plaintiffs, recorded and were paid at the correct rate for some overtime they worked.

However, the plaintiffs claim that it is undisputed that they are owed overtime pay for the time spent at the 4:00 p.m. roll call on days they worked first shift. [Record No. 80] The defendant counters that time spent in roll call is not compensable "work" under the FLSA. [Record No. 89, p. 7] And even if roll call does qualify as "work," the Sheriff's Office maintains that the amount of time roll call consumes is *de minimis* and, therefore, not compensable. [Record No. 92, p. 2]

Next, the plaintiffs claim that the defendant's rounding policy and record keeping practices violate the FLSA. [Record No. 80] Conversely, the Sheriff's Office argues that their rounding policy is a valid defense to the plaintiff's overtime claim. [Record No. 82-1, p. 21] The Sheriff's Office also asserts that the plaintiffs' paid thirty-minute lunch break constitutes a credit against the claimed overtime. Further, the defendant argues that it is entitled to summary judgment on all claims because the plaintiffs have failed to produce sufficient evidence for a reasonable jury to award them overtime compensation or liquidated damages. [Record No. 82-1, p. 16]

### A. Roll Call Qualifies as "Work" Under the FLSA.

The parties agree that the 4:00 p.m. roll call requires first shift employees to remain at work for some amount of time after their shift officially ends. As an initial matter, the defendants contend that attending roll call is not "an indispensable part of [the plaintiffs'] principal [job] activities" and, therefore, is not compensable work. [Record No. 89, p. 7] This defense fails as a matter of law because the definition of work for law enforcement officers specifically includes "roll call" as an example.

The FLSA itself does not define work. And when the United States Supreme Court first began interpreting the Act, it defined "work" broadly. *See Tennessee Coal, Iron & R.*

*Co. v. Muscoda Local No. 123*, 321 U.S. 590 (1944); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). The litigation that followed led Congress to pass the Portal-to-Portal Act, superseding the Supreme Court's earlier interpretations. *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 517 (2014). The Act exempts employers from overtime liability for "activities which are preliminary to or postliminary to" the "principal activity or activities which such employee is employed to perform." 29 U.S.C. § 254(a).

The Sheriff's Office argues that the afternoon roll call is a postliminary activity. [Record No. 89, p. 7-8] Even though the activity is mandatory, the defendant maintains that it is not integral to the performance of the deputies' job duties and, therefore, is non-compensable under the Portal-to-Portal Act. *Id.* Nevertheless, the regulations implementing the FLSA and the Portal-to-Portal Act as to law enforcement employees define "compensable work" to include:

> all the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. Such time includes all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity, such as attending **roll call**, writing up and completing tickets or reports, and washing and re-racking fire hoses.

29 C.F.R. § 553.221(b) (emphasis added).

In support of its position, the defendant relies on *Integrity Staffing*, 135 S. Ct. at 515-16, where a warehouse owner required its employees to undergo a security screening to check for stolen items before leaving the premises. The Supreme Court held that the mandatory screening was not "integral and indispensable" and, as a result, was a "noncompensable postliminary activity." *Id.* at 518. Notably, that case did not involve a roll call or law enforcement officers. In this case, a federal regulation specifically states that roll

call is a compensable work activity for law enforcement officers like the plaintiffs. *See* 29 C.F.R. § 553.211 (definition of "law enforcement activities"). Thus, the Sheriff's Office is not entitled to summary judgment based on its argument that roll call does not qualify as "work."

### B. The *De Minimis* Issue Involves a Factual Dispute.

The Sheriff's Office contends that the time the plaintiffs spent attending roll call is noncompensable because it consumes a *de minimis* amount of time. The United States Supreme Court has recognized that a *de minimis* rule applies to FLSA overtime cases. In *Anderson v. Mt. Clemens Pottery*, 328 U.S. at 692, *overruled on other grounds by Integrity Staffing*, 135 S.Ct. at 516, the Court explained that,

> [w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

*See also White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012).

After acknowledging that the de minimis rule likely applied to at least some of the time in dispute, the *Anderson* Court remanded the case because "the precise scope of that application can be determined only after the trier of facts makes more definite findings as to the amount of . . . time in issue." *Anderson*, 328 U.S. at 692. Similarly, the amount of time a roll call lasts is also disputed in this case. Here, estimates range from three to thirty minutes. Viewing all the evidence presented regarding this issue, a reasonable juror could find that the time spent by plaintiffs in roll call is negligible. However, a reasonable juror could also conclude from the same evidence that the amount of time spent regarding this activity is

substantial. Thus, summary judgment is not appropriate with respect to the defendant's *de minimis* argument.

        **C.    The Defendant's Rounding Policy Does Not Entitle Either Party to Summary Judgment.**

The parties contend that summary judgment is warranted based on the defendant's rounding policy. The defendant claims that its rounding policy complies with the FLSA and explains why employees do not frequently record or receive overtime compensation for the short amount of time spent in roll call. [Record No. 82-1, p. 21] The plaintiffs, on the other hand, claim that the policy violates the FLSA because it results in major discrepancies between actual time worked and compensated time. [Record No. 80-1, pp. 6-7] Again, both arguments hinge on the length of roll calls. And, as outlined above, the parties have presented conflicting evidence on this issue.

In support of their respective positions, the parties cite 29 C.F.R. § 785.48(b), which states:

> (b) "Rounding" practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

According to the defendant, this regulation explicitly authorizes the Sheriff's Office to round time to the nearest quarter hour. While the plaintiffs agree that the policy is compliant with the regulation on its face, they argue that, in practice, it results in

"overwhelming[ly] round[ing] Plaintiffs' time down rather than up," leading to "systematic underpayment of wages." [Record No. 80-1, p. 15]

For comparison, the plaintiffs cite *Russell v. Illinois Bell Tel. Co.*, 721 F. Supp. 2d 804 (N.D. Ill. 2010). In *Russell*, the call center employer also had a fifteen-minute rounding policy like the one here. *Id.* at 819. If the employee worked more than eight minutes over his or her regular shift in one day, the employee received overtime. *Id.* However, if the employee worked less than eight minutes over his or her regular shift in one day, he or she was not eligible for overtime. *Id.* Because the call center required its employees to continue taking calls until fifteen seconds prior to the end of their shift, many employees took calls that lasted for some minutes beyond their shift. *Id.*

In deciding whether to certify a class action, the Illinois trial court held that "[i]f, as plaintiffs allege, Illinois Bell's time rounding . . . policies often caused plaintiffs to work unpaid overtime in increments of under eight minutes, then these company-wide practices may have resulted in unpaid overtime work." *Id.* at 820. Likewise, if the daily roll call lasted under seven-and-a-half minutes every day as the defendant claims, the plaintiffs could have been undercompensated by as much as thirty-five minutes of pay each week. Conversely, if the daily roll call frequently lasted fifteen to thirty minutes as the plaintiffs allege, the rounding policy should have resulted in fair overtime compensation. Because the average length of the roll call is in dispute, this issue is also not appropriate for summary judgment.

### D. The Defendant Cannot Use Paid Lunch Breaks to Offset Overtime Compensation.

The Sheriff's Office also alleges that its paid thirty-minute lunch breaks offset any overtime accrued for the short afternoon roll call. [Record No. 82-1, pp. 19-20] The federal regulations provide that "[b]ona fide meal periods are not worktime." 29 C.F.R. § 785.19(a). Therefore, public agencies are entitled to exclude meal times from law enforcement officer's "time worked" if the break is in fact a "bona fide meal period" under § 785.19. 29 C.F.R. § 553.223.

To qualify as a "bona fide meal period," ordinarily the break must be at least thirty minutes. 29 C.F.R. § 785.19(a). Additionally, a lunch break is not a "bona fide meal period" if the employee "is required to perform any duties, whether active or inactive, while eating." *Id.* To determine whether a lunch break is compensable, the Sixth Circuit applies the "predominant benefit test." *Ruffin v. MotorCity Casino*, 775 F.3d 807, 811 (6th Cir. 2015). Under that test, "'[t]ime spent predominantly for the employer's benefit during a period, although designated as a lunch period or under any other designation, nevertheless constitutes working time compensable under the [FLSA].'" *Id.* (quoting *F.W. Stock & Sons, Inc. v. Thompson*, 194 F.2d 493, 496-97 (6th Cir. 1952)). Additionally, whether a lunch break meets the predominant benefit test "depends on the totality of the circumstances." *Ruffin*, 775 F.3d at 811.

The defendant relies on *Barefield v. Village of Winnetka*, 81 F.3d 704 (7th Cir. 1996), where the Seventh Circuit found that a fifteen-minute roll call was non-compensable, in part, because of the paid thirty-minute lunch break the plaintiff law enforcement officers received. However, the *Barefield* court also observed that the issue of whether a break constitutes a

"bona fide meal period" usually requires factual determinations. *Id.* at 710. The court concluded that summary judgment was only appropriate because the record contained uncontroverted facts. *Id.*

Here, few, if any, of the facts surrounding the plaintiffs' lunch break are uncontroverted. Sheriff Witt testified that her employees always received their entire thirty-minute lunch break, but the plaintiffs argue that their meal period is often less than thirty minutes and sometimes non-existent. [Record No. 88, pp. 6-8] Thus, they contend that their meal time does not qualify as a bona fide meal period and is compensable as a rest break under 29 C.F.R. § 785.18. *Id.* at 7, n. 4. This conflicting testimony constitutes a factual dispute that cannot be resolved through summary judgment.

Alternatively, the plaintiffs assert that the Sheriff's Office implicitly agreed to treat their lunch break as compensable work time, preventing the defendant from using the time to offset overtime claims. *Id.* at pp. 12-15. Based on the evidence submitted by the parties, the Sheriff's Office likewise is not entitled to summary judgment on this issue.

Hours that are generally non-compensable may be made compensable by agreement under 29 C.F.R. § 778.320, which states:

> In some cases an agreement provides for compensation for hours spent in certain types of activities which would not be regarded as working time under the Act if no compensation were provided. Preliminary and postliminary activities and time spent in eating meals between working hours fall in this category. The agreement of the parties to provide compensation for such hours may or may not convert them into hours worked, depending on whether or not it appears from all the pertinent facts that the parties have agreed to treat such time as hours worked. Except for certain activity governed by the Portal-to-Portal Act (see paragraph (b) of this section), the agreement of the parties will be respected, if reasonable.
>
> (a) Parties have agreed to treat time as hours worked. Where the parties have reasonably agreed to include as hours worked time devoted to activities of the

> type described above, payments for such hours will not have the mathematical effect of increasing or decreasing the regular rate of an employee if the hours are compensated at the same rate as other working hours. The requirements of section 7(a) of the Act will be considered to be met where overtime compensation at one and one-half times such rate is paid for the hours so compensated in the workweek which are in excess of the statutory maximum.
>
> (b) Parties have agreed not to treat time as hours worked. . . . [I]n the case of time spent in activity which would not be hours worked under the Act if not compensated and would not become hours worked under the Portal-to-Portal Act even if made compensable by contract, custom, or practice, the parties may reasonably agree that the time will not be counted as hours worked. Activities of this type include eating meals between working hours. Where it appears from all the pertinent facts that the parties have agreed to exclude such activities from hours worked, payments for such time will be regarded as qualifying for exclusion from the regular rate under the provisions of section 7(e)(2), as explained in §§ 778.216 to 778.224. The payments for such hours cannot, of course, qualify as overtime premiums creditable toward overtime compensation under section 7(h) of the Act.

The Sheriff's Office contends that the regulation applies only to collective bargaining agreements ("CBA"). [Record No. 92, p. 7] The defendant is correct that most of the cases cited by the plaintiffs discuss CBAs. Nevertheless, the defendant has failed to produce any authority suggesting that § 778.320 applies only to cases that involve CBAs. In fact, several courts have found that an agreement to count bona fide meal periods as compensable work time may exist outside of a CBA.

In *Scott v. City of New York*, 592 F. Supp. 2d 386, 401-02 (S.D. N.Y. 2008), the court held, "[i]n a case where an employer has long paid employees for bona fide meal periods and included meal periods in FLSA calculations, a court may find that a prior agreement exists, regardless of whether the agreement is expressly incorporated into the CBA."

*Jones v. C & D Technologies, Inc.*, 8 F. Supp. 3d 1054, 1067 (S.D. Ind. 2014), involved a CBA. There, the employees testified that they had an express agreement with

their employer to count their twenty-minute lunch break as compensable work time. However, the *Jones* court also weighed other factors in making its decision, including the employer's failure to keep records of the amount of time employees spent at lunch. *Id.* at 1068-69. The court observed that the employer "did not require employees to clock out for the lunch break and then back in, did not otherwise monitor whether employees took a lunch break, and did not compensate employees extra when they worked through or skipped a lunch break." *Id.* at 1069. Therefore, the court concluded that the lunch break qualified as compensable work time. *Id.*

Likewise, the Sheriff's Office's employees are not expected to record their lunch break time on their time sheets. Instead, Cox and Sheriff Witt admit that the employees list eight hours of work even if they took thirty-minute lunch breaks and only worked seven-and-a-half hours. The fact that the defendant has never before treated the lunch break as a credit against overtime is further proof that an agreement existed to count the break as compensable work. Besides the roll call period, there is no dispute that employees were regularly paid overtime for the time they worked beyond their regular eight-hour shift, regardless of whether they took thirty-minute lunch breaks.

Again, *Barefield*, 81 F.3d 704, cited by the defendant, is distinguishable. In that case, a manual specifically stated that an employee would only be paid overtime for working thirty minutes or more beyond his regular shift. *Id.* at 708. No such manual or policy exists here. Because the Sheriff's Office regularly treated lunch breaks as compensable work time, it cannot avoid summary judgment by claiming the break as a credit for unpaid overtime.

> E.  **The Plaintiffs Have Offered Sufficient Evidence of Damages to Avoid Summary Judgment in the Defendant's Favor.**

The Sheriff's Office contends that the plaintiffs have not produced sufficient evidence of damages to withstand summary judgment. [Record No. 82-1, p. 16] An employee who brings suit under the FLSA "has the burden of proving that he performed work for which he was not properly compensated." *Anderson*, 328 U.S. at 686-87, *overruled on other grounds by Integrity Staffing*, 135 S.Ct. at 516. However, when an employer has not maintained proper and accurate records of its employees' time, the Supreme Court has held that,

> an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 687-88. Even if the employer's failure to keep accurate records is the result of a bona fide mistake regarding whether certain activities constitute compensable work, the rule still applies. *Id.* at 688. "Unless the employer can provide accurate estimates, it is the duty of the trier of facts to draw whatever reasonable inferences can be drawn from the employees' evidence as to the amount of time spent in these activities in excess of the productive working time." *Id.* at 693. *See also O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567 (6th Cir. 2009).

The defendant argues that the "plaintiffs' statements do not create any issue of material fact with regard to overtime." [Record No. 82-1, p. 18] However, the plaintiffs have testified that they were required to attend roll call after their shift ended on days that

they worked first shift and were not otherwise occupied by job-related tasks. They also allege that they were not compensated for their time spent in roll call, regardless of its length. This testimony creates material issues of fact which cannot be resolved at this stage of the litigation. Simply put, whether the plaintiffs' testimony is credible is not an appropriate issue for summary judgment. *Moran v. Al Basit, LLC*, 788 F.2d 201, 205 (6th Cir. 2015).

The plaintiffs also agree that, on days that they were performing other tasks during roll call, they recorded those tasks as overtime. Therefore, they assert that their unpaid overtime can be approximately calculated by determining the average length of roll call and multiplying that by the number of days that they worked first shift and did not record overtime for another job-related task. The Sheriff's Office contends that the amount of damages is still uncertain. However, summary judgment is only appropriate where the fact of damage is itself uncertain, not where the amount of damages is uncertain. *Anderson*, 328 U.S. at 688.

Additionally, the defendants have not produced contrary evidence proving the precise amount of time spent by the plaintiffs in roll call. In fact, Lt. Col. Amato, who checked off the deputies present at roll call every day, admitted that he destroyed those records. [Record No. 80-4, p. 7] In summary, the plaintiffs have satisfied their initial burden, but the defendant has failed to meet its burden of disproving damages with accurate records. Therefore, the defendant is also not entitled to summary judgment on this particular claim.[1]

---

[1] In its reply, the defendant also maintains that liquidated damages are unwarranted. [Record No. 92] Under 29 U.S.C. § 216(b), employers who violate section 207 of the FLSA "***shall*** be liable" to the affected employee for unpaid overtime compensation plus "an additional equal amount of liquidated damages." (emphasis added) A district court only has the discretion not to award liquidated damages if the employer proves that his act or omission "was in good

F.  **The Plaintiffs Are Not Entitled to Summary Judgment Regarding the Defendant's Record Keeping Practices.**

According to the plaintiffs, partial summary judgment is also warranted because the defendant's "record keeping practices violated the FLSA and Kentucky law." [Record No. 80, p. 2] Rule 56(a) of the Federal Rules of Civil Procedure only contemplates summary judgment for claims or defenses or parts thereof. The plaintiffs do not claim in their Amended Complaint that they are entitled to judgment based on the defendant's violation of record keeping requirements. Likewise, the defendants have not raised their compliance with statutory record keeping requirements as a defense. Accordingly, this issue is also not appropriate for summary judgment.

G.  **Summary Judgment Is Appropriate Regarding the Defendant's Claim of Sovereign Immunity.**

Finally, the plaintiffs claim they are entitled to partial summary judgment on the issue of whether the defendant is entitled to raise sovereign immunity as a complete defense to the claims asserted in this action. The defendant did plead sovereign immunity as a defense in its amended Answer. [Record No. 67] However, the Court concluded previously that the

---

faith and that he had reasonable grounds" for believing that it was not a violation of the FLSA." *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002) (quoting 29 U.S.C. § 260). The Sheriff's Office relies on the fact that it paid the plaintiffs for other overtime. [Record No. 92, p. 12] It also points out that the plaintiffs never filed formal complaints about the roll call and that they dropped some of their earlier claims when they filed their Amended Complaint. *Id.* at 13. None of this amounts to evidence of the defendant's good faith or reasonableness. Therefore, the plaintiffs' claim for liquidated damages will proceed.

Sheriff's Office is not entitled to sovereign immunity. [Record No. 12] Therefore, the plaintiff's motion regarding this issue will be granted.[2]

### IV.

For the foregoing reasons, it is hereby

**ORDERED** as follows:

1. The motion for partial summary judgment [Record No. 80] filed by Plaintiffs Van Berry, Joshua Bedson, Aaron Wilson, and James Dunn is **GRANTED**, in part, and **DENIED**, in part, as set forth herein.

2. Defendant Office of the Fayette County Sheriff's motion for summary judgment [Record No. 82] is **DENIED**.

This 16th day of December, 2015.



Signed By:
*Danny C. Reeves* DCR
United States District Judge

---

[2] As explained in an earlier opinion, the Supreme Court of Kentucky has held that KRS Chapter 337 implies that sovereign immunity is waived for claims under Kentucky's wage and hour laws. [Record No. 12, p. 2] *See Madison Cnty. Fiscal Court v. Ky. Labor Cabinet*, 352 S.W.3d 572 (Ky. 2011). Additionally, county governments are not immune from federal claims (*i.e.,* claims under the FLSA). [Record No. 12, p. 3] *See Northern Ins. Co. v. Chatham Cnty.*, 547 U.S. 189 (2006).